UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
MARIOS PANAYIOTOU,

                  Plaintiff,

          – against –

N.Y.C. DEPARTMENT OF EDUCATION,

                  Defendant.
----------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

18-cv-06522 (AMD) (SMG)

**ANN M. DONNELLY**, District Judge:

On November 15, 2018, the *pro se* plaintiff, Marios Panayiotou, brought this action alleging employment discrimination, hostile work environment, and retaliation against his former employer, the New York City Department of Education. (ECF No. 1.) On December 17, 2018, the DOE moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (ECF No. 7.) For the reasons that follow, the DOE's motion to dismiss is granted in part and denied in part.

## BACKGROUND

### I. Factual Allegations[1]

The plaintiff is a 54-year-old man of Greek-Cypriot national origin. (ECF No. 1 at 12.) He started working for the DOE in early 2000 as a substitute teacher.[2] (*Id.* at 9, 12.) In January

---

[1] All facts are taken from the complaint and its attachments. (ECF No. 1.) For purposes of this motion, I accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). In his complaint, the plaintiff refers to and relies on various documents, including his New York State Division of Human Rights submissions. Accordingly, I consider them in deciding this motion. *See generally Williams v. Time Warner Inc.*, 440 F. App'x 7 (2d Cir. 2011) (discussing courts' reliance on documents referred to and thus incorporated into a complaint when deciding a motion to dismiss).

[2] It is not clear when the plaintiff began working with the DOE. In a cover letter to his complaint, he claims that he began working as a substitute teacher in 1999. (ECF No. 1 at 9.) However, the Restatement of Facts attached to his complaint states that he began working for the DOE in February 2000. (ECF No. 1 at 12.)

1

of 2012, he was hired as a full-time math and science teacher at P.S./I.S. 384, a public junior high school in Brooklyn. (*Id.* at 12.)

He began his new position with a standard three-year probationary period during which the plaintiff alleges that he "demonstrated effective teaching techniques" and received the highest possible evaluations each year. (*Id.* at 12-13.) He expected to receive tenure based on his performance. (*Id.* at 13.)

According to the plaintiff, his employment experience began to sour in the 2014-2015 school year, and specifically in the months preceding his tenure review. (*Id.*) In October of 2014, school principal Phyllis Raulli directed the plaintiff to sign a one-year extension of his probationary term or risk termination. (*Id.*) The plaintiff signed the extension. (*Id.*) After that, the assistant principal started giving the plaintiff poor evaluations. (*Id.*) The plaintiff complains that he went from receiving mostly "effective" ratings to receiving "developing" ratings in multiple areas. (*Id.*)

The plaintiff also alleges that the school principal and assistant principal began commenting on his ethnicity and age. The assistant principal told the plaintiff that his "cultural background" would cause problems, and that "he would be better off teaching in Greece." (*Id.*) The principal told the plaintiff to "speak clearly" to students – which the plaintiff says was a reference to his accent. (*Id.*) When two teachers in their 20s and 30s were granted tenure, the assistant principal told the plaintiff that the "administration preferred younger teachers[.]" (*Id.*)

The plaintiff alleges that the principal and assistant principal continued to harass him into the next school year, 2015-2016. (*Id.* at 13-14.) The assistant principal "frequently told" the plaintiff "that 'the cultural differences [were] not on [his] side.'" (*Id.* at 14.) The principal

2

repeatedly told the plaintiff that he should find another job, and complained to other members of the administration about him. (*Id.*)

When the plaintiff became eligible for tenure in January of 2016, he and a union representative met with the principal, Ms. Raulli. (*Id.* at 14.) She directed the plaintiff to sign a second year-long probationary extension or risk termination. (*Id.*) When the union representative insisted that the plaintiff had a right to consult lawyers before signing the extension, the principal began shouting and threatened to fire the plaintiff; he signed the extension only because he was fearful that he would be fired. (*Id.*)

At the beginning of the 2016-2017 school year, the plaintiff complains that he was continuously denied a laptop, chart paper, and calculators. (*Id.*) He believes that the denials were "intended to negatively impact [his] classroom environment." (*Id.*) During a teaching development meeting, the principal and assistant principal gave the plaintiff no meaningful feedback about his teaching and told the plaintiff to leave the school. (*Id.*) He alleges that he received more frequent and increasingly negative teaching evaluations. (*Id.* at 16.)

The plaintiff complained to a union representative about the lack of feedback and continuous workplace harassment. (*Id.*) He alleges that he specifically advised the union representative that the harassment was based on his age and national origin. (*Id.*)

When the principal learned of the plaintiff's complaints, she allegedly berated the plaintiff, threatening "to start writing things, too!" (*Id.*) Within days, the principal issued a letter stating that the plaintiff "may be discontinued." (*Id.*) By the end of the month, the principal issued a termination letter. (*Id.* at 17.)

The plaintiff appealed his termination to no avail. (*Id.*) He since has been unable to secure a new teaching position with the DOE despite a nomination from a different school administrator. (*Id.*)

## II. Procedural History

The plaintiff filed a complaint with the New York State Division of Human Rights on November 1, 2017. (*Id.* at 30.) He alleged discrimination and retaliation based on his national origin and age. (*Id.*) After an investigation, the Division of Human Rights denied the plaintiff's complaint. (*Id.*) The plaintiff received a right to sue from the Equal Employment Opportunity Commission on August 17, 2018. (*Id.* at 8.)

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings must be construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). At the motion to dismiss stage, the court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Williams*, 440 F. App'x at 9 (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

Discrimination complaints are subject to a "lowered standard of review" at the motion to dismiss stage. *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 719 (E.D.N.Y. 2015). A plaintiff need not plead each element of a *prima facie* case to withstand a motion to dismiss.

*Vega v. Hempstead Union School Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). However, a complaint must still provide "a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendants fair notice of [the] plaintiffs' claims ... and the grounds upon which those claims rest." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007).

Allegations in a *pro se* complaint are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court must read a *pro se* complaint liberally and interpret it to raise the strongest arguments it suggests, especially when it alleges civil rights violations. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–93 (2d Cir. 2008); *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).

## DISCUSSION

The Court liberally construes the complaint as asserting discrimination, hostile work environment, and retaliation claims based on the plaintiff's national origin and age[3] under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 (Title VII), and the Age Discrimination in Employment Act of 1967 (ADEA).

---

[3] The plaintiff also checked the box for racial discrimination in his complaint. (ECF No. 1 at 5.) However, there are no allegations suggesting that the defendant discriminated against the plaintiff based on his race. Accordingly, all of the plaintiff's race discrimination claims are dismissed. *See Ninying v. Fire Dep't of the City of N.Y.*, No. 17-cv-688 (LDH), 2011 WL 4570784, at *2 (E.D.N.Y. Oct. 11, 2017) (finding that checking a box on a form complaint, without providing additional factual allegations, is insufficient to state a claim of discrimination).

I.  Discrimination Claims

The plaintiff has not plausibly alleged discrimination based on his age or national origin. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of the individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Under the ADEA, it is unlawful for an employer to "discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).

At the pleading stage, the plaintiff must allege facts that plausibly suggest that (1) his employer took an adverse action (2) because of his age or national origin. *See Vega*, 801 F.3d at 85-86; *Boonmalert v. City of New York*, 721 F. App'x 29, 32; *Chowdhury v. Sadovnik*, No. 17-cv-2613, 2017 WL 4083157, at *3-4 (E.D.N.Y. Sept. 14, 2017). Title VII requires that the complaint provide "at least minimal support" that the adverse employment action "was motivated by discriminatory intent." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). In contrast, the ADEA requires that age be a "but for" cause of the employer's adverse action, and not merely a "motivating factor." *Vega*, 801 F.3d at 85-86.

The plaintiff plausibly alleged that his employer took an adverse employment action: the plaintiff was terminated in January 2017, and had his probationary teaching period extended twice when he was otherwise eligible for tenure.[4] *See Vega*, 801 F.3d at 79 (noting that

---

[4] The plaintiff also alleged other possible adverse employment actions. For example, he claims that the school denied his requests for school supplies, and that he received increasingly negative performance reviews. (*See, e.g.*, ECF No. 1 at 15.) A denial of school supplies is unlikely to constitute an adverse employment action. *See Lam v. N.Y.C. Dep't of Educ.*, No. 18-cv-2755 (PGG), 2019 WL 2327655, at *11 (S.D.N.Y. May 30, 2019) (the failure to provide desired equipment when a job can be performed without it does not constitute an adverse employment action) (collecting cases). However, negative performance evaluations can constitute an adverse employment action when they "trigger negative consequences" to the individual's employment. *Taylor v. N.Y.C. Dep't of Educ.*, No. 11-cv-3582, 2012 WL 5989874, at *7 (E.D.N.Y. Nov. 30, 2012). To the extent that the plaintiff's negative performance evaluations led to his termination, they also can constitute adverse employment actions.

termination is "easy to identify" as an adverse employment action) (citing *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)); *see also Tolbert v. Smith*, 790 F.3d 427, 435-436 (2d Cir. 2015) ("The denial of tenure after three years, when a teacher was otherwise eligible for tenure, does not become any less an adverse action because the teacher is provided with another year of probationary employment").

However, the plaintiff did not plausibly allege that these adverse employment actions were motivated either by his age or national origin. While offensive remarks can raise an inference of discrimination, *see Simpson v. MTA/New York City Transit Auth.*, No. 16-CV-3783, 2016 WL 8711077, at *3 (E.D.N.Y. Aug. 26, 2016) (an "employer's criticism of the plaintiff's performance in ethnically degrading terms" can suggest discrimination), "stray remarks" – even if offensive – are insufficient to support a case of employment discrimination. *Fletcher v. ABM Building Value*, 18cv-1232, 2019 WL 2288327, at *3 (2d Cir. 2019) (citing *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)). Discriminatory statements are probative when they are made by a decision-maker, related to the specific employment decision challenged, and made close in time to the decision. *Martin v. City Univ. of N.Y.*, No. 17-cv-6791 (KPF), 2018 WL 6510805, at *9 (S.D.N.Y. Dec. 11, 2018) (citing *Fried v. LVI Servs., Inc.*, 500 App'x 39, 41 (2d Cir. 2012)). "Comments made by non-decision-makers, such as supervisors or co-workers, are 'rarely given great weight.'" *Id.* at *9 (citing *Silver v. N. Shore Univ. Hosp.*, 490 F. Supp. 2d 354, 363 (S.D.N.Y. 2007)).

Here, the plaintiff alleges that the assistant principal – who was not responsible for the plaintiff's firing – made most of the national-origin based comments.[5] Moreover, the principal's

---

[5] The assistant principal was responsible for the majority of the plaintiff's evaluations which, as pleaded by the plaintiff, became increasingly negative. (ECF No. 1 at 13.) However, the plaintiff has not alleged that the negative evaluations were a pretext for national origin- or age-based discrimination. Without more specificity, the plaintiff's discrimination claims do not survive a motion a dismiss.

comment that the plaintiff should "speak clearly" (ECF No. 1 at 13) reflects no national origin animus. *See de la Cruz v. N.Y.C. Human Res. Admin. Dep't*, 884 F. Supp. 112, 116 (S.D.N.Y. 1995) ("In a discrimination case, explicit and unambiguous statements of racial . . . hostility would be direct evidence."), *aff'd*, 82 F.3d 16 (2d Cir. 1996). No other allegations support an inference that the principal's statement was discriminatory rather than a suggestion to help the plaintiff improve his teaching and communicate more effectively with his students. Moreover, even if the Court were to assume that the principal's comment was racially charged, the plaintiff fails to plead any connection between the remark and an adverse employment decision. *See, e.g., Yan v. Ziba Mode, Inc.*, 15-cv-4715 (PGG) (JLC), 2016 WL 1276456, at *4 (S.D.N.Y. Mar. 29, 2016) (dismissing complaint alleging that co-workers made critical comments regarding the plaintiff's accent and ability to interact with customers). The plaintiff's age-based claim suffers from the same deficiency.[6] *See Martin*, 2018 WL 6510805, at *10 (finding no discriminatory intent from a single remark, made ten months prior to the plaintiff's termination).

Accordingly, the plaintiff's discrimination claims under Title VII and the ADEA are dismissed.

## II. Hostile Work Environment Claims

The plaintiff did not plausibly allege that his workplace was permeated with discriminatory hostility. To avoid dismissal at the pleading stage, the plaintiff "need only plead facts to support the conclusion that she was faced with harassment of such quality or quantity

---

[6] The plaintiff does not allege the existence of any similarly situated comparator to illustrate his discrimination claim. While the plaintiff complains that two younger teachers received tenure in a year that he should have been eligible for tenure (ECF No. 1 at 13), he provides no additional facts to suggest the other teachers were materially similar to him in any other aspect that may be considered in a tenure decision. *See Laurant v. City of N.Y.*, 17-cv-5740 (KAM) (JO), 2019 WL 1364230, at *9 (E.D.N.Y. Mar. 26, 2019) ("Missing from plaintiff's Amended Complaint are other bases upon which [the] defendants evaluate potential candidates, including test scores, education, . . . or relevant experience.")

that a reasonable employee would find the conditions of her employment altered for the worse." *Pantene v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citing *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (international punctuation omitted)); *see also Giordani v. Legal Aid Soc'y*, No. 17-cv-5569, 2018 WL 6199553, at *2 (E.D.N.Y. 2018) ("The analysis of the hostile working environment theory of discrimination is the same under the ADEA as it is under Title VII") (citing *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir.1999)).

Neither Title VII nor the ADEA "set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation omitted). While a plaintiff "need not present a list of specific acts[,]" "[m]inor incidents do not merit relief." *Kassner v. 2nd Ave. Deli, Inc.*, 496 F.3d 229, 241 (2d Cir. 2007). The acts must be "sufficiently continuous and concerted to be considered pervasive." *Id.*

The plaintiff alleges numerous unpleasant interactions with his supervisors, but does not establish that they were based on the plaintiff's national origin or age. For example, the plaintiff alleges that the school principal yelled at him and threatened to fire him. (*See, e.g.*, ECF No. 1 at 14.) However, there are no allegations that suggest that the principal was motivated by animus against the plaintiff's national origin or age. Instead, the conduct seems to stem from personal conflict – not discrimination. *See Oncale v. Sundowner Offshore Serv. Inc.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace").

As to the alleged national origin- and age-based animus, the incidents as described are not severe or pervasive enough to support a hostile work environment claim. Again, the plaintiff cites the principal's instruction to "speak clearly" – an alleged reference to the plaintiff's Greek-Cypriot accent – as an example of hostility. (ECF No. 1 at 13.) This allegation is so vague and innocuous that it fails to provide the defendants with fair notice of the factual grounds supporting

the plaintiff's hostile work environment claim. *See Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 360 (S.D.N.Y. 2006) ("Though it is true that facially neutral comments may contribute to the hostility of an employee's work environment, there must be some basis to infer that the facially neutral comments are part of a workplace permeated with discrimination" (internal citation omitted)). The plaintiff also alleges that in 2014, the assistant principal said that the plaintiff "was better off teaching in Greece," and "frequently" told the plaintiff that "the cultural differences [were] not on [his] side." (ECF No. 1 at 13-14.) The "allegation that these remarks were 'frequent' is simply too vague, because the precise frequency of such comments is of great importance in analyzing a hostile work environment claim." *Almontaser v. N.Y.C. Dep't of Edu.*, No. 13-cv-5621 (ILG) (VMS), 2014 WL 3110019, at *8 (E.D.N.Y. July 8, 2014). Without more specificity, the plaintiff's hostile work environment claim under Title VII is dismissed.

The plaintiff alleges only one age-based incident: the assistant principal commented in 2016 "that the 'administration preferred younger teachers, as unfair as that is.'" (ECF No. 1 at 13.) A single instance of age-based animus cannot support a hostile work environment claim. Moreover, hostile work environment claims generally consist of more blatantly offensive conduct than alleged here. *See, e.g., Aiello v. Stamford Hosp.*, No. 09-cv-1161, 2011 WL 3439459, at *25–26 (D. Conn. Aug. 8, 2011) (finding no hostile work environment on summary judgment where the plaintiff was called "old man" several times a week and was also the subject of offensive drawings). Accordingly, the plaintiff's hostile work environment under the ADEA is also dismissed.

### III. Retaliation Claims

The plaintiff has plausibly alleged retaliation. Both Title VII and the ADEA contain similar anti-retaliation provisions. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful

10

employment practice for an employer to discriminate against any of his employees ... because [s]he has made a charge" under Title VII); 29 U.S.C. § 623(d) ("It shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has made a charge" under the ADEA). To survive a motion to dismiss, the plaintiff must plausibly allege that (1) the defendant took adverse employment action against him (2) because he complained of or otherwise opposed discrimination. *See Vega*, 801 F.3d at 91; *Chowdhury*, 2017 WL 4083157, at *6.

The Second Circuit takes a "generous" view of retaliatory acts at the motion to dismiss stage. *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013). "[A]ny action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination' may constitute retaliation." *La Grande v. DeCrescente Distrib. Co.*, 370 Fed. App'x 206, 212 (2d Cir. 2010) (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Littlejohn*, 795 F.3d at 317-18 (concluding that even informal protests of discriminatory employment practices, such as complaints to management, are protected activities under Title VII). The temporal proximity between the complaint and the adverse action must be "very close" to establish a causal connection. *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)); *see also Cunningham v. Consol. Edison Inc.*, No. 03-CV-3522, 2006 WL 842914, at *15 (E.D.N.Y. Mar. 28, 2006) ("[A] passage of two months between the protected activity and the adverse employment action seems to be the dividing line.") (collecting cases).

The plaintiff submitted a formal grievance to the teacher's union about the school administration's allegedly discriminatory and harassing conduct. (ECF No. 1 at 16.) He allegedly explained to the union representative that the conduct was related to his age and

national origin.[7] (*Id.*) When the principal learned of his complaint, she "berated him" and threatened to "start writing things, too!" (*Id.*) Within days, she issued a letter stating that the plaintiff could be "discontinued." (*Id.*) By the end of the month, the principal issued a termination letter. (*Id.* at 17.) The plaintiff's termination immediately following his complaint could dissuade a reasonable worker from making a charge of discrimination. The plaintiff's allegations give the defendant fair notice of the plaintiff's retaliation claims. Therefore, the defendant's motion to dismiss the plaintiff's retaliation claims under Title VII and the ADEA is denied.

## CONCLUSION

For the reasons stated above, the defendant's motion to dismiss the plaintiff's discrimination and hostile work environment claims is granted. The defendant's motion to dismiss the plaintiff's retaliation claims is denied. A Court dismissing a *pro se* complaint should grant leave to amend freely, if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (alterations and quotation marks omitted). The Court, therefore, grants the plaintiff leave to amend the complaint within 30 days of the entry of this Order.

---

[7] The defendant provided the grievance form as an attachment to its motion to dismiss. (ECF No. 7-3 at 1.) The grievance form states "harassment" as the grievance without more specificity. (*Id.*) The defendant argues that the "[p]laintiff's grievance form does not allege that the plaintiff was harassed or intimidated due to any protected characteristic." (ECF No. 7-4 at 15.) The Court considers this grievance form in its decision because it is integrated into the plaintiff's complaint. *See Bruce Committee v. Yen*, 764 Fed. App'x 68, 69 (2d Cir. 2019) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (finding that a district court may rely on documents that the plaintiff "had either in their possession or had knowledge of and upon which they relied in bringing suit") (internal citations, quotations, and punctuation omitted)). An employee's complaint must make clear that the employee believes she is being discriminated against on the basis of a protected trait. *Kelly*, 716 F.3d at 17. While the grievance form does not provide the required specificity, the plaintiff makes clear in his complaint that he explained that the harassment was based on his national origin and age. (ECF No. 1 at 16.) Reading the complaint liberally and interpreting it to raise the strongest arguments it suggests, the Court cannot dismiss the retaliation claim based on this single document.

Should the plaintiff have a basis to claim of employment discrimination or hostile work environment, he should provide facts in support of that claim. The plaintiff is reminded that his amended complaint must "plead enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The new complaint must be captioned "Amended Complaint" and bear the same docket number as this Order (18-cv-06522 (AMD) (SMG)). The plaintiff is advised that any amended complaint that he files will completely replace the original complaint, so he should not rely on any allegations in the original complaint he filed. All further proceedings will be stayed for 30 days.

**SO ORDERED.**

Dated: Brooklyn, New York
      June 12, 2019

                                            s/Ann M. Donnelly
                                      _____
                                      ANN M. DONNELLY
                                      United States District Judge